RIVERA, Appellant,

v.

LAKE TERMINAL RAILROAD COMPANY, Appellee.

[Cite as *Rivera v. Lake Terminal RR. Co.* (1999), 132 Ohio App.3d 483.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 97CA006722.

Decided Feb. 9, 1999.

*Neal E. Shapero* and *Michael J. Rogan,* for appellant.

*Richard Gurbst* and *Paula B. Christ,* for appellee.

DICKINSON, Judge.

Plaintiff John Rivera has appealed from a jury verdict in the Lorain County Common Pleas Court for defendant Lake Terminal Railroad Company in this negligence action. He has argued that (1) the trial court incorrectly denied his request to call one of defendant's attorneys to the witness stand, (2) the trial court incorrectly denied his motion for a new trial, (3) the trial court incorrectly denied his motion for a mistrial, and (4) the trial court incorrectly denied his motion for judgment notwithstanding the verdict.[1] This court affirms the jury's verdict because (1) the trial court was not obligated to grant plaintiff's request to

---

1. Plaintiff's assignments of error have been consolidated for ease of discussion.

call defendant's attorney to the witness stand, (2) the trial court did not abuse its discretion in refusing to grant plaintiff's motion for a new trial, (3) the alleged errors did not combine to create cumulative error, thereby requiring a mistrial, and (4) reasonable minds could not have come to but one conclusion, that conclusion being adverse to defendant's position, upon the evidence submitted.

## I

On August 16, 1994, plaintiff filed a complaint in the Lorain County Common Pleas Court, claiming that he had been injured by a defective rail saw that he used in his employment with defendant. Trial commenced on January 27, 1997. According to plaintiff, he suffered permanent back injuries on the job during early 1993 while working with the rail saw. He claimed that the saw had a history of not working, that he had repeatedly complained about it, and that others had been hurt by it, including one of his supervisors.

Defendant's evidence contradicted plaintiff's evidence. According to defendant's witnesses, plaintiff reported to work on May 11, 1993, with a note from his doctor. Plaintiff allegedly told his supervisor that "he felt a little pull in his back when he moved a dresser over the weekend." Apparently, plaintiff was able to work the next day.

During June 1993, according to defendant, plaintiff handed a second supervisor another note from his doctor. Plaintiff allegedly told this second supervisor that his problem was an "old injury, [that] it did not happen on the Railroad, and [that the first supervisor] knew about it." Defendant asserted that it had no notice that the rail saw was not working properly. Also, defendant demonstrated that plaintiff had not filed an injury report, as was required by defendant's policies.

On January 30, 1997, the jury returned a verdict in favor of defendant. The jury found that defendant had not been negligent. Furthermore, it found that plaintiff had not been injured while acting within the scope of his employment with defendant. Plaintiff filed a motion for judgment notwithstanding the verdict and a motion for a new trial on February 14, 1997. On February 27, 1997, the trial court denied both motions. Plaintiff timely appealed to this court.

## A

Plaintiff's first assignment of error is that the trial court incorrectly denied his request to call one of defendant's attorneys to the witness stand. During trial, defendant introduced a videotape, running approximately one minute, showing the operation of a rail saw. After the video was shown and during cross-examination of plaintiff, defendant implied that the person operating the rail saw was one of its own attorneys, apparently a female attorney smaller in stature

than plaintiff. According to plaintiff, defendant wished the jury to infer that, because a "small person" had operated a rail saw without incident, plaintiff, a much larger person, could not have been injured operating a similar saw.

Plaintiff requested that he be allowed to call to the witness stand the female attorney in question. According to him, her testimony was necessary on a "variety of topics, including the set-up of the videotape, the facts and circumstances surrounding its production, its relationship as applied to [plaintiff's] case, the equipment used, whether the rail saw shown in the video tape was the same rail saw that [plaintiff] used when he was injured, [the attorney's] experience as a trackman, her experience in operating rail saws, whether [she] needed help lifting the rail saw, whether [she] needed help stopping the rail saw, whether [she] needed help operating the rail saw in actually cutting the rail, who started the rail saw, who started cutting the rail, whether [she] suffered any difficulties in the process of operating the rail saw, and whether [she] hurt her own back while operating the rail saw." The trial court denied his request. Specifically, it noted that, as soon as defendant's attorney attempted to imply that one of its own attorneys had been operating the rail saw and plaintiff objected to that implication, it sustained the objection and instructed the jury that no evidence was before it from which it could conclude the identity of the operator. The trial court instructed the jury:

"* * * [T]here's been no evidence as to who was using or operating the saw, the rail saw, that you observed in the video, and I'm instructing you that in light of the fact there has been no evidence to that effect, you will give no consideration to any claims or suggestions and questions by Counsel as to who may have, in fact, been operating that piece of machinery."

A jury is presumed to follow the instructions of the trial court, including curative instructions. *State v. Garner* (1995), 74 Ohio St.3d 49, 59, 656 N.E.2d 623, 634. Assuming that it was improper for defendant to refer to one of its attorneys as the operator of the rail saw in the videotape, plaintiff was not prejudiced by that reference, and did not need to call that attorney to the witness stand, because the jury was instructed to disregard that reference. The jury did not, therefore, have any improper evidence before it. Consequently, the trial court did not err by not permitting plaintiff to call one of defendant's attorneys to the witness stand. Plaintiff's first assignment of error is overruled.

B

Plaintiff's second assignment of error is that the trial court incorrectly failed to grant his motion for a new trial. He has assigned three specific grounds to demonstrate why his motion should have been granted: (1) the use of the

videotape resulted in a "trial by ambush," because he had not been provided a copy of it, (2) defendant's attorney made improper comments to the jury, which "severely and unduly prejudiced [plaintiff's] case," and (3) defendant's attorney did not withdraw from representing defendant and the trial court did not disqualify defendant's attorneys, after one of them had made herself a "factual witness[ ]" in the case.

First, plaintiff has argued that the introduction of the videotape resulted in a "trial by ambush." He has asserted that, upon his request during discovery, defendant provided him with a copy of a videotape, apparently produced by the manufacturer of the rail saw. During trial, however, defendant introduced its own videotape of one of its attorneys operating a rail saw, without first having provided that videotape to plaintiff. Defendant then argued a "new theory" based on that videotape: "that even a person significantly smaller than [plaintiff], like [defendant's attorney], could operate a rail saw without getting injured." Defendant's alleged misconduct, plaintiff has argued, required a new trial.

The granting of a motion for a new trial is within the discretion of the trial court. *Sharp v. Norfolk & W. Ry. Co.* (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219, 1223. Civ.R. 59(A) provides the grounds for which a new trial may be granted. None of those grounds is applicable to this case, and the trial court did not err by failing to grant plaintiff's motion. Further, plaintiff waived his right to raise this argument on appeal.

Plaintiff failed to object to the videotape before, during, or immediately after it was shown to the jury. According to the trial transcript:

"[Defendant's counsel]: Your Honor, I'd like to show a minute tape. Leave the machine there, if we could.

"The Court: Counsel, do you know what this is?

"[Defendant's counsel]: Cutting of a rail.

"[Plaintiff's counsel]: We'd like to approach, your Honor.

"The Court: All right.

"(Thereupon, the following proceedings occurred at the bench out of the hearing of the jury.)

"[Plaintiff's counsel]: That's only a minute long, right?

"[Defendant's counsel]: Right, it's a minute long.

"[Plaintiff's counsel]: Go ahead and show it.

"The Court: All right.

"(Thereupon, the following proceedings occurred back within the hearing of the jury.)

"* * *

"(Thereupon, a videotape was played for the jury.)

"[Defendant's counsel]: Thank you.

"For the record, it seemed to be easier to bring the video in, your Honor, than either to ask you for permission to cut a rail saw in here or to take the jury out to the yard.

"The Court: I understand. Thank you, Counsel.

"By [Defendant's counsel]:

"Q: [Plaintiff], do you happen to recognize the cutter?

"A: No.

"Q. Looked like a small person, huh?

"A: I don't know how tall he was, but looked like average size.

"Q: The feminists in the room would be insulted that you would conclude that was a man. Why do you conclude that was a man?

"A: I just say it was average size.

"Q: Would you be surprised to learn that it was [one of defendant's attorneys] who was cutting?

"A: Yeah.

"Q: Now, when she cut using the saw—

"[Plaintiff's counsel]: Objection, your Honor. Objection.

"Q: When the individual was cutting—

"The Court: Sustained."

At sidebar, outside the hearing of the jury, the following proceedings took place:

"[Plaintiff's counsel]: This is a trick. We were provided with a videotape from the manufacturer of that rail saw. That's the only videotape we ever got. We never got—we've never seen this, we never knew anything about it. It's a trick, surprise, and prejudicial.

"[Defendant's counsel]: It's no different than [plaintiff] getting down on bended knee and doing the stuff he did yesterday.

"[Plaintiff's counsel]: The reason why we object is, we weren't provided with this video. It was the videotape from the manufacturer, and it showed how a rail would be cut. This is a total surprise.

"The Court: Your objection is late. I'm going to overrule your objection. I am going to give the jury an instruction indicating there's been no evidence as to who was operating the saw—"

As plaintiff stated, he objected because the videotape shown was different from the videotape provided to him in discovery. The trial court determined that plaintiff failed to timely object to the introduction of the videotape on that ground. It did not err by so concluding. No objection was made while the videotape was being shown to the jury, or immediately thereafter. Instead, plaintiff allowed it to be shown to the jury in its entirety. Only after defendant attempted to question plaintiff about the size and identity of the individual operating the rail saw did he object, and the trial court cured that problem with its instruction.

Plaintiff was present when the videotape was shown. He should have realized that the videotape was different from the copy provided to him, and, if he believed that was objectionable, he should have objected at that time. Plaintiff's argument that he should have been granted a new trial due to defendant's "ambush" is without merit.

■ Plaintiff's second argument is that defendant made improper remarks to the jury that prejudiced his case. He has argued that defendant's attorney "insinuated that [plaintiff] was sexist in concluding that the person in the videotape was a man and that feminists in the room would be insulted by [his] answer. The clear import and impact of [defendant's counsel's] remarks was to influence and incite passion and prejudice of the members of the jury, which consisted of six women." He has further asserted that "[n]o curative instructions to the jury regarding the videotape in question and the remarks of [defendant's] counsel could possibly suffice to remove the presumed undue prejudice resulting from the flagrant misconduct by [defendant's counsel,] which violated the disciplinary rules."

■ Again, plaintiff failed to object when that comment was made. Instead, he waited until defendant implied that the operator of the rail saw was one of defendant's attorneys. Plaintiff, therefore, waived a challenge to this alleged error on appeal. In addition, although plaintiff has alluded to defendant's "flagrant misconduct," in violation of the disciplinary rules, he has only cited DR 1–102 and its prohibition against conduct prejudicial to the administration of justice. Defendant's isolated comment about the "feminists" in the room being insulted at plaintiff's conclusion that the operator of the rail saw was a man did not prejudice plaintiff and did not rise to the level of misconduct. Plaintiff's second argument in support of his second assignment of error is without merit.

■ Finally, plaintiff has argued that the failure of defendant's attorneys to withdraw from representing defendant and the trial court's refusal to require those attorneys to withdraw, after one of them had made herself a factual witness in the case, constituted grounds for a new trial. He has argued that, pursuant to DR 5–102, defendant's attorneys had an obligation to withdraw from representing defendant because, after implying that one of defendant's attorneys was operating the rail saw in the videotape shown to the jury, defendant's attorneys should have realized that that attorney would be called as a witness to discuss, among other things, the procedure she used to operate the saw and whether she had injured herself in operating the saw.

DR 5–102(B) requires an attorney to withdraw from representation when she "learns or it is obvious that [she] or a lawyer in [her] firm may be called as a witness other than on behalf of [her] client," when such testimony would be prejudicial to her client. In this case, the trial court refused to allow defendant's attorney to take the stand. This court held above that the trial court did not err in doing so. Further, there is nothing in the record that indicates that, had plaintiff been permitted to call defendant's attorney to the stand, her testimony would have been prejudicial to defendant. Consequently, defendant's attorneys were not obligated to withdraw from the case. Plaintiff's third argument in support of his second assignment of error is without merit and his second assignment of error is overruled.

## C

Plaintiff's third assignment of error is that the trial court incorrectly failed to grant his motion for a mistrial, as well as his motion for a new trial, because "the cumulative misconduct of [defendant's attorneys] severely and unduly prejudiced plaintiff's case." He has argued that, when viewed within the context of the entire case, defendant's attorneys' conduct during trial was prejudicial. He has essentially relied upon all of the grounds discussed in his first two assignments of error to argue that, taken as a whole, the conduct of defendant constituted prejudicial error. He has asserted, therefore, that, even if no single error prejudiced his case, the cumulative effect of those errors did.

This court has already concluded that the trial court did not err by denying plaintiff's request to call defendant's attorney to the stand and by denying plaintiff's motion for a new trial. All the conduct that plaintiff has complained of did not, in isolation, prejudice him. The Ohio Supreme Court has held that, in the criminal context, errors at trial, if not individually prejudicial, cannot become so by "sheer weight of numbers." See *State v. Hill* (1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068, 1083–1084; but see *State v. DeMarco* (1987), 31 Ohio St.3d 191, 31 O.B.R. 390, 509 N.E.2d 1256. Nonetheless, even if this court were to

recognize a doctrine of cumulative error, the incidents during trial, based upon which plaintiff has claimed error, did not combine to prejudice him. Plaintiff's third assignment of error is overruled.

## D

Plaintiff's fourth assignment of error is that the trial court incorrectly denied his motion for judgment notwithstanding the verdict. He has argued that he produced sufficient evidence to demonstrate that the rail saw had a "long history" of not working properly and had caused injuries to other workers, including plaintiff's supervisor. Plaintiff has claimed that defendant produced no evidence to refute his proof that he was "required to use a defective and unsafe rail saw that was supplied by Defendant."

Pursuant to Civ.R. 50(B), "not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion[.]" The standard for granting a motion for judgment notwithstanding the verdict is the same as that for granting a motion for a directed verdict, pursuant to Civ.R. 50(A):

" 'When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.' " *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271, 273, quoting Civ.R. 50(A)(4).

In considering a motion for a directed verdict, a trial court must not consider the weight of the evidence. *Id.;* Civ.R. 50(B). Such a motion examines only the "materiality of the evidence, as opposed to the conclusions to be drawn from the evidence." *Texler, supra,* at 680, 693 N.E.2d 271. This court must examine the evidence to determine whether reasonable minds could come to but one conclusion regarding whether defendant was negligent in causing plaintiff's injury, that conclusion being adverse to defendant. If so, the trial court should have granted his motion for judgment notwithstanding the verdict.

Defendant introduced testimony of Robert Kepic, who was plaintiff's supervisor at the time he allegedly sustained his injuries. Kepic stated that, on May 11, 1993, plaintiff handed him a note from his doctor. According to Kepic's testimony:

"* * * On the morning of May 11th, prior to 7:00 a.m.—I'm not sure when—but [plaintiff] did come into my office and presented me with this doctor's excuse, and in presenting me with that excuse, had said that over the weekend he was moving a dresser, and while moving that dresser he felt a pull in his back and he wanted to have it checked by the doctor. So he made an appointment on Monday to see the doctor, and the doctor had told him that it was a mild strain and that he was able to return to work the following day without any restrictions or conditions."

Kepic further testified that plaintiff had never filed an accident report claiming to have been injured on the job, although company policy required that one be filed. Also, he stated that he first discovered that plaintiff claimed to have been injured on the job after reading an article about plaintiff's lawsuit in the paper.

That testimony alone was sufficient to withstand a motion for judgment notwithstanding the verdict. Construing that evidence most strongly in favor of defendant, a reasonable jury could not come to but one conclusion regarding the manner in which plaintiff sustained his injuries. Defendant's evidence suggested that plaintiff injured himself while moving furniture, not while operating a rail saw.

In addition, defendant presented the testimony of Jack Justice, the supervisor who replaced Kepic. Justice stated that, on June 28, 1993, plaintiff gave him a note from his doctor. According to Justice:

"I asked [plaintiff] how he hurt his back. He said it was an old injury, it did not happen on the Railroad, and Mr. Kepic knew about it."

The testimony of Kepic and Justice was sufficient for the jury to reasonably conclude that defendant was not negligent in causing plaintiff's injuries. Even in the absence of that testimony, the jury would have been free to disbelieve plaintiff's testimony about how he was injured. Accordingly, the trial court did not err by failing to grant plaintiff's motion for judgment notwithstanding the verdict. Plaintiff's fourth assignment of error is overruled.

### III

Plaintiff's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., concurs.

CARR, J., dissents.

CARR, J., dissenting.

I respectfully dissent. During discovery, defendant's counsel informed plaintiff that defendant possessed a short videotape created by the manufacturer of the rail saw at issue herein. During plaintiff's testimony at trial, defendant's counsel asked to show the jury a videotape. The trial court asked plaintiff's counsel if he knew what the videotape contained. Plaintiff's counsel indicated that he did.

After the videotape was played, defendant's counsel began cross-examining plaintiff concerning the videotape. Defendant's counsel first questioned plaintiff about the size of the person who was operating the saw in the videotape. Defendant's counsel then asked if it would surprise plaintiff to learn that the operator of the saw in the videotape was a female. Defendant's counsel then revealed that the female operator was actually defendant's counsel's diminutive co-counsel.

At that point, plaintiff's counsel objected. The trial court sustained the objection, but plaintiff's counsel requested a sidebar conference. At the sidebar, plaintiff's counsel argued that the videotape was a trick. Plaintiff's counsel complained that he was never provided with this videotape during discovery, but, instead, was provided with a short manufacturer's videotape. Plaintiff's counsel claimed that he thought that defendant's counsel intended to show the jury the manufacturer's videotape. The trial court overruled this objection as being late and instructed the jury to disregard any evidence concerning who had been operating the saw in the videotape. Defendant's counsel then continued his cross-examination, using the videotape as demonstrative evidence of how the saw was to be operated.

The next day, prior to the taking of any further testimony, plaintiff's counsel requested that he be permitted to call defendant's counsel's co-counsel to the stand to be cross-examined concerning the contents of the videotape. The trial court then addressed defendant's counsel, stating:

"I happen to think, I personally find, that this is very disappointing, that Counsel and your firm would attempt to pursue this line in this manner. And I have no problem with you attempting to present a video of a person wearing safety gear, that may turn out to be a woman, to rebut the issue that Plaintiffs are raising that this is heavy, hard work, that you understood to be strong and muscular, and it's taxing on your back.

"However, when you then use counsel to be that person in the video, and from what it appears, bring this tape in the morning of trial without Plaintiff's Counsel having the opportunity to see it in advance, that's when I really start to have a problem, because I think it's foreseeable that Plaintiff's Counsel would then want

to call [the co-counsel] to the stand to ask her how her back was, how that saw compared to the saw used at the Lake Terminal Railroad.

"And once she gets on the witness stand and she is potentially a witness, I believe there is a strong probability, or at least a strong consideration, that [the co-counsel] has to withdraw from this case as she's a witness and can't be a witness and Counsel, and since she has to withdraw, her firm has to withdraw, and you're out, and then we're in a situation where we've got either a mistrial or lengthy delay until [defendant] gets a new law firm to represent them and completes this trial."

Nevertheless, after properly setting forth the dilemma created by defendant's counsel's misconduct ("we've got either a mistrial or lengthy delay"), the trial court avoided the issue altogether by simply denying plaintiff's request to call defendant's counsel's co-counsel as a witness and then denying plaintiff's subsequent request for a mistrial. Although I echo the trial court's sentiments regarding defendant's counsel's misconduct, I must disagree with the trial court's resolution of the dilemma created thereby.

First, there can be no doubt that the videotape at issue herein substantially damaged plaintiff's case. Plaintiff's entire case was based on how difficult it allegedly was to operate a particular rail saw. The videotape that was shown to the jury directly undermined that allegation. The videotape showed a small person easily operating a rail saw, and defendant's counsel's subsequent questions implied that the saw shown in the videotape was the same saw that allegedly injured plaintiff. Thus, the jury was confronted with a videotape purporting to show a small person easily operating the very same saw that plaintiff claimed was difficult to operate. This is just the type of simple, straightforward, down-to-earth evidence that leaves a strong impression on a jury.

Second, by denying plaintiff the opportunity to cross-examine defendant's counsel's co-counsel, the trial court denied the plaintiff any opportunity whatsoever to challenge the reliability of the demonstration portrayed in the videotape. Plaintiff should have been permitted to question someone concerning the set up of the rail saw shown in the video, whether the rail saw in the video was the same saw that allegedly injured plaintiff, whether the small person in the video set up the saw and did the cutting on her own, and whether the small person in the video injured herself in any way while filming the video. Thus, plaintiff was substantially prejudiced by his resulting inability to challenge the reliability of the demonstration.

Third, the trial court's curative instruction in this regard did nothing to cure the resulting prejudice. The trial court merely instructed the jury to disregard any evidence concerning the identity of the person in the video. However, the

fact that defendant's counsel's co-counsel was the operator in the video was irrelevant. Instead, the video was relevant and damaging because it showed a small person easily operating a saw that plaintiff (apparently, a big person) claimed was difficult to operate. The actual identity of that small person was irrelevant; the only facts that were relevant were that the person was small and was able to operate the saw with ease, unlike plaintiff.

Additionally, the trial court has created a new evidentiary loophole. An attorney who does not believe that demonstrative evidence can survive cross-examination unscathed can protect the evidence from attack by using co-counsel in the demonstration.

Although defendant's counsel argues that a reversal would only serve to punish his client for his own misconduct, an affirmance will only serve to punish *plaintiff* for defendant's counsel's misconduct. It seems to me that the former result is more equitable than the latter. As such, I would reverse and remand this case for a new trial, whereupon the defendant could either proceed with the videotape and a different attorney, or retain its current attorney for the retrial and not use the videotape.