Connie and Floyd Leis appeal from a summary judgment entered by the Montgomery County Court of Common Pleas on their negligence action against Dayton Medical Imaging II, Ltd. ("Dayton Medical Imaging").
On May 29, 1998, Connie and Floyd Leis filed a complaint alleging that Dayton Medical Imaging had negligently failed to maintain the premises in a reasonably safe condition, to correct a dangerous condition, and to warn Connie thereof. According to the complaint, Connie had tripped and had fallen while descending an access ramp in front of Dayton Medical Imaging. Dayton Medical Imaging filed an answer denying the alleged negligence.
Connie was deposed on January 8, 1999, and she testified as follows.
At approximately 8:30 a.m. on May 31, 1996, which Connie described as a "clear, dry, sunny" day, Floyd drove Connie to her appointment for a stress test at Dayton Medical Imaging, where she had visited on about four previous occasions. Floyd parked the car in the parking lot located at the front of the building. Connie and Floyd walked from the parking lot up the access ramp, and they entered the building through an entrance that they had not used on prior visits. The stress test lasted about two hours, during which time Floyd waited outside in the car. After the test, Connie walked out the door that she had entered and headed back down the ramp that she had used earlier that morning. While descending the ramp, Connie "scanned" the sidewalk, looked "straight ahead toward [her] car," and walked "as carefully as [she] always [does]." About halfway down the ramp, Connie's right foot "brushed up against the curb," causing her to twist her left ankle and to trip and fall into bushes adjacent to the ramp. Connie testified that she "had a tendency of going to the right like you do in cars on the road." Connie testified that she had known that there were curbs on either side of the ramp because she had seen them earlier that morning while walking into the building, that the ramp was a grey cement color, that there were no yellow markings along the curbs, and that the ramp did not have any handrails.
On February 1, 1999, Dayton Medical Imaging filed a motion for summary judgment asserting that it had no duty to warn of the alleged defect based on Connie's admissions at her deposition that she had known that there were curbs on either side of the ramp prior to descending it because she "had seen them on the way in," that the weather had been clear and sunny, and that her ability to view the ramp while descending it had not been impaired. Dayton Medical Imaging submitted a sketch of the front of the building and pictures of the ramp in support of its motion.
On February 16, 1999, Connie and Floyd Leis filed a memorandum opposing summary judgment, insisting that genuine issues of fact remained on whether Connie had prior knowledge of the ramp's condition such that it was "open and obvious." They submitted an affidavit from Connie swearing that, although she had been aware of "a concrete curb on each side of the ramp where [she] entered the Dayton Medical Imaging office," she had not been aware of the absence of a handrail at that time. Connie further stated that, while exiting the building after a tiring medical procedure, she had been looking for her husband and had not been conscious of the "existence of the curb, nor of its specific qualities or dimensions." Leis also attached a sworn letter from engineer Bernard J. Krotchen, explaining that he had inspected the site of Connie's fall and had taken photographs and measurements of the ramp and curbs. Krotchen stated:
 The ramp had a drop of 10 inches from the adjacent concrete sidewalk to the asphalt paved parking lot. There was a 5 inch wide curb on both sides flush at the top of the ramp and 6 inches high at the base of the ramp. No handrails were present on either side of the ramp nor was there any safety yellow marking on the sides or curbs by the ramp to warn pedestrians.
* * *
 The Ohio Basic Building Code (OBBC) section 815.0 Ramps specifically [states] —
 815.5 GUARDS AND HANDRAILS: Guards shall be provided on both sides and constructed in accordance with Section 827.0. Handrails conforming to Section 816.5.1 shall be provided on at least one side of every ramp having a slope greater than one unit vertical in 12 units horizontal (1:12). Ramps required by Section 512.0 for the physically handicapped shall have handrails on both sides of the ramp whenever the vertical rise between landings exceeds 6 inches (152 mm).
Based on his training and experience in "Safety Engineering, Human Factors and Ergonomics," Krotchen formed a professional opinion that, with a reasonable degree of engineering certainty, Dayton Medical Imaging had violated "the Ohio Basic Building Codes and good safe Engineering practices regarding the lack of safety yellow markings" and "this is the direct and proximate cause of the trip and fall accident with resulting injuries that occurred on May 31, 1996."
In a cryptic entry with no explanation of the rationale for the decision, the trial court awarded summary judgment to Dayton Medical Imaging on February 22, 1999. Connie and Floyd Leis filed a notice of appeal, raising one assignment of error.
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT IN A PREMISES LIABILITY CASE.
Connie and Floyd Leis contend that the trial court erred in granting summary judgment because genuine issues remained for trial on whether Dayton Medical Imaging had been negligent in maintaining the access ramp and whether the defect was open and obvious.
Pursuant to Civ.R. 56(C), summary judgment is appropriate if the trial court determines that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
 Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. We review the trial court's summary judgment determination de novo.Chapman v. Adia Services, Inc. (1997), 116 Ohio App.3d 534, 540.
"In order to establish actionable negligence, the plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." Texler v. D.O. Summers Cleaners Shirt Laundry Co.
(1998), 81 Ohio St.3d 677, 680. A premises owner owes business invitees a duty to exercise reasonable care to maintain the premises in a reasonably safe condition and to warn of latent defects of which the owner should have knowledge. Paschal v. Rite Aid Pharmacy,Inc. (1985), 18 Ohio St.3d 203, 203. This duty includes a responsibility to warn invitees of latent or concealed defects or perils of which the premises owner knows or should know. Green v. ChinaHouse (1997), 123 Ohio App.3d 208, 211. The existence of a duty depends on the foreseeability of injury. Texler,81 Ohio St.3d at 680. The premises owner "owes no duty to warn invitees entering the property of open and obvious dangers on the property." Simmers v. BentleyConstr. Co. (1992), 64 Ohio St.3d 642, 644. The owner is entitled to expect that invitees will discover such dangers and take appropriate measures to protect themselves. Id. at 644.
A pedestrian on a public sidewalk has a duty to "use care reasonably proportioned to the danger likely to be encountered but is not, as a matter of law, required to look constantly downward * * *." Texler,81 Ohio St.3d at 680-681, quoting Grossnickle v. Germantown (1965),3 Ohio St.2d 96, paragraph two of the syllabus. "[T]he question of whether the contributory negligence of a plaintiff is the proximate cause of the injury is an issue for the jury to decide pursuant to the modern comparative negligence provisions of R.C. 2315.19(A)(1)."Texler, 81 Ohio St.3d at 681. In Green,123 Ohio App.3d at 212, the court instructed:
 The determination of whether a hazard is latent or obvious depends upon the particular circumstances surrounding the hazard. In a given situation, factors may include lighting conditions, weather, time of day, traffic patterns, or activities engaged in at the time.
 In all our daily activities, we concentrate varying degrees of attention on different tasks. A person walking across an icy street in winter must concentrate more attention on conditions underfoot than on the same street on a bright summer day. Under any given set of circumstances, how much attention a reasonably prudent person should direct to his or her surroundings is an extremely fact-specific analysis. For this reason, courts should hesitate to grant summary judgments in this sort of case, but, instead, should submit them to a jury for determination.
See, also, Lovejoy v. Sears Roebuck Co., (June 19, 1998), Lucas App. No. L-98-1025, unreported ("The particular facts of each case must be examined to determine whether a danger is open and obvious.").
In this case as well, reasonable minds could differ over the "proper distribution of negligence between the parties." See Texler,81 Ohio St. 3d at 681. Based on Krotchen's professional opinion that Dayton Medical Imaging violated "the Ohio Basic Building Codes and good safe Engineering practices regarding the lack of safety yellow markings" and that the condition of the ramp had proximately caused Connie's accident, reasonable minds could conclude that Dayton Medical Imaging had breached its duty to maintain the ramp in a reasonably safe condition or to warn Connie of the condition. See Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 568 (holding that although a violation of an administrative rule such as the OBBC does not constitute negligence perse, such a violation may be admissible as evidence of negligence"). Jurors could also reasonably find that Connie was at least partially to blame for the fall based on her admission that she had seen the curbs adjacent to the ramp while entering the building earlier that day, had a tendency to walk toward the right, and had been searching the parking lot for her husband while walking down the ramp. Although it has been held that summary judgment is appropriate if "the only conclusion of a reasonable trier of fact was that [the plaintiff] was over fifty percent negligent" so as to bar recovery under R.C. 2315.19(C),Hayes v. Wendy's Internatl., Inc. (Feb. 16, 1999), Warren App. No. CA98-07-074, unreported, we do not believe that reasonable factfinders could only conclude that Connie was over fifty percent negligent. Because the record did not establish, as a matter of law, (1) that Dayton Medical Imaging was not negligent, or (2) that Connie was barred from recovery under the principle of comparative negligence, the trial court erred in awarding summary judgment to Dayton Medical Imaging.
The assignment of error is sustained.
The judgment of the trial court will be reversed.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Thomas G. Eagle
James P. Fleisher
John F. Haviland
Hon. John W. Kessler