[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common Pleas, in which the trial court granted a motion for summary judgment filed by appellees, Johnson's Island Property Owners Association, et al., and dismissed appellants' complaint for damages in a personal injury action.
{¶ 2} On appeal appellants, Anthony A. Apotsos and Carolyn Apotsos, set forth the following two assignments of error:
{¶ 3} "Assignment of error no. 1
{¶ 4} "The trial court erred in granting summary judgment to Kevin Kirkpatrick by finding that the injuries sustained by Anthony Apotsos and Carolyn Apotsos were not reasonably foreseeable.
{¶ 5} "Assignment of error no. 2
{¶ 6} "The trial court erred in granting summary judgment to Johnson's Island Property Owners Association and Robert Hruska by finding that the injuries sustained by Anthony Apotsos and Carolyn Apotsos were not reasonably foreseeable."
{¶ 7} Johnson's Island is a residential property which, for the most part, is privately owned. Appellee, Johnson's Island Property Owners Association ("JIPOA"), is composed of those island residents who own property on the island and pay a yearly membership fee.
{¶ 8} The island is accessed only by traversing a causeway, also known as Gaydos Drive. At the end of Gaydos Drive is an orange toll gate, through which all vehicular traffic entering or exiting the island must pass. Beside the gate is a stop sign. Persons entering the island in motorized vehicles are required to stop at the gate and pay a $1 toll; however, members of the JIPOA are issued passes that enable them to drive through the gate without paying the toll. Pedestrians and bicyclists are expected to bypass the gate and thereby avoid paying the toll. Funds derived from the toll gate are used by the JIPOA to maintain the causeway. The gate is under continuous surveillance by way of a videotape machine that records images of all persons and vehicles entering and leaving the island.
{¶ 9} On June 2, 2000, the videotape captured an image of appellee, Kevin Kirkpatrick, driving his truck through the toll gate, while the orange gate arm was in the down position, without paying the toll. The video also showed that, as a result of Kirkpatrick's actions, the gate arm was broken. Appellee, Robert Hruska, who worked for the JIPOA as a general handyman on an as-needed basis, replaced the gate arm the same day. Hruska then viewed the tape and spoke with Kirkpatrick, who admitted that he broke the toll gate.
{¶ 10} On June 3, 2000, at approximately 7:30 a.m., the videotape again recorded an image of Kirkpatrick breaking the gate arm as he drove through the toll gate without paying the toll. At approximately 10:30 a.m., Hruska discovered the gate was broken and began making repairs. After replacing the gate arm, Hruska went to the Marblehead Police Station to report Kirkpatrick's actions.
{¶ 11} At approximately 1:25 p.m., Hruska returned to the toll gate to paint the arm and adjust the mechanism so that the arm was level with the pavement. While adjusting the mechanism, Hruska placed the arm in an upright position. While the gate was up, several vehicles entered and exited the island without stopping at the toll gate, while other vehicles voluntarily stopped and paid the toll.
{¶ 12} At approximately 1:30 p.m., appellant, Anthony Apotsos, and his wife, Carolyn, were riding bicycles on Gaydos Drive, heading toward the island. Anthony Apotsos, who preceded his wife by several seconds, approached the gate on the slightly downhill slope, riding at approximately 12 miles per hour. As Apotsos approached the gate, the arm was still in an upright position; however, when Apotsos was within approximately 20 feet of the gate, Hruska lowered it without warning. When Apotsos saw the gate coming down, he attempted to stop the bicycle suddenly, causing him to fly over the handlebars and onto the roadway. As a result of the fall, Anthony Apotsos suffered a broken neck.
{¶ 13} On March 29, 2001, Anthony and Carolyn Apotsos filed a complaint against Hruska and the JIPOA. The complaint alleged that Anthony's injuries were caused by their "negligent, willful and wanton actions" including, but not limited to, those actions taken by Hruska on June 3, 2000. Appellants also named Kirkpatrick in the complaint, alleging that Anthony would not have been injured if Kirkpatrick had not broken the gate arm.
{¶ 14} On December 17, 2001, Kirkpatrick filed a motion for summary judgment and a memorandum in support thereof, in which he asserted that he did not owe a duty of care to appellants. Alternatively, Kirkpatrick asserted that his negligence, if any, was not the proximate cause of Anthony's injuries due to the "intervening superseding actions of * * * Hruska."
{¶ 15} Attached to Kirkpatrick's motion were portions of his own deposition testimony, in which he stated that he drove through the toll gate because the clutch on his truck malfunctioned, making him unable to stop the vehicle. In addition, Kirkpatrick relied on Hruska's deposition testimony, in which Hruska testified that he repaired the gate on June 2 after he was notified that it was broken, and again at 10:30 a.m. on June 3, when he discovered the broken gate upon attempting to leave the island.
{¶ 16} Hruska further testified in his deposition that when he left to file a police report on June 3, the toll gate was in good working order. Hruska stated that, later that day, he was painting the gate arm and making further adjustments to the level of the arm when Anthony Apotsos fell off his bicycle and was injured. Hruska further stated that, while he was adjusting the gate arm, his back was to Gaydos Drive, and he did not see Anthony Apotsos until after Anthony fell off his bicycle.
{¶ 17} In addition to the above testimony, Kirkpatrick relied on the deposition testimony of Anthony Apotsos, who testified that he and Carolyn were riding their bicycles to the island to see if a friend, Harold Clagg, was at home. Anthony further testified that the toll gate was in an upright position as he approached it; however, it suddenly fell without warning, causing him to apply his brakes and ultimately fall off the bicycle.
{¶ 18} On January 2, 2002, appellants filed a response to Kirkpatrick's motion for summary judgment, in which they argued that Kirkpatrick owed a duty to appellants to not break the toll gate, and that he acted both negligently and recklessly when he drove his malfunctioning truck through the gate. Appellants further argued that it was reasonably foreseeable that Anthony Apotsos would be injured as a result of Kirkpatrick's failure to make sure the gate was properly repaired.
{¶ 19} In their response, appellants relied on the deposition testimony of Hruska, Kirkpatrick, Apotsos, and JIPOA President, Harold Clagg. Appellants also attached to their response copies of still images taken from the surveillance videotape, which showed Kirkpatrick's truck breaking the gate, and Anthony Apotsos falling to the ground in front of the lowered gate on June 3, 2000.
{¶ 20} On January 4, 2002, the JIPOA and Hruska filed a joint motion for summary judgment and memorandum in support thereof. The JIPOA asserted in its motion that, as a licensor, the only duty owed to Apotsos was to "avoid willfully or wantonly causing * * * injury." The JIPOA and Hruska jointly argued that Anthony Apotsos failed to establish that the toll gate was negligently repaired by Hruska, and asserted that Anthony's actions were the "direct and proximate cause of his own injuries."
{¶ 21} In support of their motion, the JIPOA and Hruska relied on portions of Anthony Apotsos' deposition testimony, in which he testified that he and Carolyn had ridden their bicycles to the island on at least 10 other occasions, and that Anthony was aware of the stop sign at the end of Gaydos Drive. Anthony further testified that his bicycle was going approximately 12 miles per hour, he braked hard when the gate suddenly descended, and he never came into direct contact with the gate arm.
{¶ 22} On January 17, 2002, appellants filed a response, in which they argued that an issue of fact remains as to whether the JIPOA and Hruska created a dangerous situation when Hruska repaired the gate without putting orange cones in the causeway to warn approaching persons that the gate was being repaired. Appellants further argued that an issue remains as to whether Hruska was capable of properly repairing the gate. Finally, appellants argued that by lowering the gate without looking to see if anyone was approaching, Hruska and, vicariously, the JIPOA, "recklessly, willfully, and/or wantonly ignored the fact that their actions had a great probability of resulting in harm."
{¶ 23} On February 19, 2002, the trial court issued a decision in which it found, as to Kirkpatrick, that, while it is foreseeable that someone may have been injured by the broken gate before it was repaired, it was not foreseeable that Anthony Apotsos would have been injured by "flying over the handlebars of his bike as a result of a sudden stop that was necessitated by a person adjusting the broken gate after repairing it." Accordingly, the trial court found that Kirkpatrick owed no duty to appellants in this case, and he was therefore entitled to summary judgment as a matter of law.
{¶ 24} As to the JIPOA, the trial court found that because appellants were licensees, the JIPOA had no duty to them other than to refrain from engaging in "willful, wanton, or reckless conduct * * *." The court further found that the JIPOA had no involvement in the repair of the gate "other than being the owner of the property upon which the gate was placed," and that the JIPOA did not act willfully, wantonly or recklessly toward appellants, and it was therefore entitled to summary judgment as a matter of law.
{¶ 25} As to Hruska, the trial court found that appellants presented no evidence that Hruska failed to exercise ordinary care in repairing the toll gate. The trial court also found that, even if Hruska had breached a duty of care to appellants, he could not have reasonably foreseen or anticipated the injury sustained by Anthony Apotsos, and Hruska was therefore entitled to summary judgment as a matter of law. On April 1, 2002, a timely notice of appeal was filed.
{¶ 26} This court notes at the outset that in reviewing a summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
{¶ 27} Appellants assert in their first assignment of error that the trial court erred by granting summary judgment in favor of Kirkpatrick. In support thereof, appellants argue that the trial court erred when it found that Kirkpatrick owed no duty to appellants, after determining that Kirkpatrick could not have reasonably foreseen that Anthony Apotsos would be injured by stopping his bicycle suddenly in response to Hruska's lowering of the toll gate arm.
{¶ 28} In order to establish negligence, a plaintiff has the burden to show the existence of a duty on the part of the defendant, a breach of that duty, and that the breach proximately caused the aggrieved party's injury. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 680. The existence of a duty depends on the foreseeability of the injury. Id., quoting Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. The issue of whether or not a duty exists in a negligence action is one of law for the court to determine. Gin v. Yachanin (1991), 75 Ohio App.3d 802, 804, citing Mussivand v. David (1989), 45 Ohio St.3d 314.
{¶ 29} In determining foreseeability, we must consider "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act * * *. The foreseeability of harm usually depends on the defendant's knowledge." Menifee, supra, at 77 (citations omitted). In other words, for the defendant to owe a particular plaintiff a duty of care, the injured party must come "within the circle of those to whom injury may reasonably be anticipated * * *." Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, citing Gedeon v. East Ohio Gas Co. (1934), 128 Ohio St. 335, 338-339
(other citations omitted).
{¶ 30} In this case, it is reasonably foreseeable that, after Kirkpatrick broke the gate arm, a person somehow could have been injured due to its broken condition. However, Anthony was not injured by the gate itself, but rather by falling from his bicycle several hours after Hruska undertook to repair the gate. Furthermore, it is undisputed that Anthony did not come into contact with any portion of the gate either before or after he fell from his bicycle.
{¶ 31} Upon consideration of the foregoing, this court finds it was not reasonably foreseeable that, hours after the toll gate arm was damaged and while the gate was being adjusted after having been repaired, the gate arm would suddenly descend, causing a person riding a bicycle on Gaydos Drive to quickly apply his brakes, fly over the handlebars, hit the ground, and break his neck. Accordingly we find, as a matter of law, that Anthony Apotsos was not within the circle of those to whom Kirkpatrick owed a duty of care, and the trial court did not err by granting summary judgment in his favor. Appellants' first assignment of error is not well-taken.
{¶ 32} Appellants assert in their second assignment of error that the trial court erred by granting summary judgment in favor of the JIPOA and Hruska. In support thereof, appellants argue that the JIPOA knew or should have known from watching the video surveillance tapes that many vehicles avoided paying the toll by violating the stop sign at the gate. Appellants further argue that, because the videotapes show the gate being broken numerous times both before and after June 3, 2000, a question of fact remains as to whether Hruska was capable of properly repairing the gate.
{¶ 33} As to the JIPOA, we note initially that the scope of the legal duty for property owners as to those persons entering their property varies depending on the status of such person, i.e., whether the person is an invitee, a licensee, or a trespasser. In this case, it is undisputed that appellants were bicycling onto Johnson's Island to see if their friend, Harold Clagg, was at home, and therefore qualify as licensees. See Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68.
{¶ 34} It is well-established that a landowner owes no duty to a licensee "except to refrain from willful, wanton or reckless conduct which is likely to injure [the licensee]." Gladon v. Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 312, 317. Willful conduct implies intent, purpose, or design to injure the licensee. Id., at 319. Wanton conduct involves the failure to exercise any care whatsoever toward those to whom he owes a duty of care, under circumstances in which there is great probability that harm will result. Id. An actor's conduct is said to be reckless "if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Thompson v. McNeill (1990),53 Ohio St.3d 102, 104-105.
{¶ 35} This court has reviewed the entire record in this case, including the deposition testimony presented in support of summary judgment by all parties and the other exhibits, and has reviewed the surveillance videotapes made on June 2 and June 3, 2000. Upon consideration thereof, we find that the trial court did not err by finding there was "no evidence that [the JIPOA] acted willfully, wantonly, or recklessly" toward appellants. However, it is undisputed that the JIPOA had an ongoing relationship with Hruska, in which the association paid Hruska as an independent contractor to repair the toll gate on many occasions, both prior to and including June 3, 2000.
{¶ 36} Generally, an employer of an independent contractor is not liable for the independent contractor's negligent acts. Pusey v. Bator (2002), 94 Ohio St.3d 275, 278, citing Clark v. Southview Hosp. 
Family Health Ctr. (1994), 68 Ohio St.3d 435, 438. There is, however, an exception to the general rule, which arises from the application of the "nondelegable duty doctrine." Id., at 279. Nondelegable duties include: "affirmative duties that are imposed on the employer by statute, contract, franchise, charter, or common law * * *." Id., citing Prosser Keeton, The Law of Torts (5 Ed. 1984) 511-512, Section 71 (other citation omitted). In such cases, "the employer is not insulated from liability if the independent contractor's negligence results in a breach of the duty." Id. See, also, Richman Bros. Co. v. Miller (1936),131 Ohio St. 424. Accordingly, our inquiry must also extend to whether Hruska violated the duty of care to appellants, either individually, or on behalf of the JIPOA.
{¶ 37} Appellants argue that Hruska's failure to place warning devices in the causeway while he was adjusting the level of the gate arm created the "dangerous situation" which resulted in Anthony Apotsos' physical injuries. Accordingly, appellants conclude that summary judgment is inappropriate in this case because a question of fact remains as to whether the JIPOA and Hruska "both individually and in connection with the negligence and recklessness of Kirkpatrick, acted negligently, recklessly, willfully, and/or wantonly, so as to proximately cause appellants' injuries.
{¶ 38} We agree with the trial court that Hruska had a duty to exercise ordinary care while repairing the gate. "The common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances." Mussivand v. David, supra, at 318. "A person is to exercise that care necessary to avoid injury to others." Id., at 319, citing 70 Ohio Jurisprudence 3d (1986) 62, Negligence, Section 19.
{¶ 39} As stated above, for appellants to recover damages, they must present evidence to demonstrate that Hruska breached his duty, and that the breach proximately caused Anthony Apotsos' injuries. Texler, supra. The existence of a duty depends on the foreseeability of the injury, i.e., "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act * * *." Menifee, supra, at 77 (citations omitted).
{¶ 40} In this case, evidence was presented that, on June 3, 2000, many vehicles and bicycles went through the toll gate without stopping while Hruska had the gate arm in an upright position. Evidence was also presented that while Hruska was fixing the gate, he had his back to Gaydos Drive. Hruska testified in his deposition that he did not check to see if anyone was approaching the gate for at least thirty seconds before he dropped the gate arm, and that he only turned around because he heard Anthony Apotsos fall off his bicycle and hit the ground. Additional evidence was presented that Hruska did not place orange cones or any other devices in the causeway in an attempt to warn approaching traffic that the gate arm could come down suddenly.
{¶ 41} Upon consideration of the foregoing, we find that a reasonably prudent person in Hruska's position should have foreseen that, by causing the gate arm to descend suddenly and without warning, a passing motorist or bicyclist could be startled, and that his or her attempt to avoid hitting the gate arm could cause an accident, resulting in personal injury. Accordingly, we find that the trial court erred by finding that Hruska's acts were not the proximate cause of Anthony Apotsos's injures because Hruska could not have foreseen or reasonably anticipated that his acts could have caused those injuries. However, we further find that the record contains no evidence that Hruska acted willfully, wantonly or recklessly in this case. Accordingly, Hruska's acts do not constitute a violation of the JIPOA's duty of care to appellants as a matter of law. Appellants' second assignment of error is well-taken in part and not well-taken in part.
{¶ 42} On consideration whereof, we further find that genuine issues of material fact remain and, as a matter of law, appellees, Kevin Kirkpatrick and the JIPOA, are entitled to summary judgment, while appellee, Robert Hruska, is not entitled to summary judgment. In addition, a question of fact remains as to whether Anthony Apotsos was contributorily negligent in this case.
{¶ 43} The judgment of the Ottawa County Court of Common Pleas is hereby affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings consistent with this decision. Court costs of these proceedings are assessed equally to appellants and appellees.
Judgment affirmed in part and reversed in part.
Sherck and Pietrykowski, JJ. concur.