[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 677.]

TEXLER, APPELLANT, *v.* D.O. SUMMERS CLEANERS & SHIRT LAUNDRY

COMPANY, APPELLEE.

[Cite as *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*,

1998-Ohio-602.]

*Civil procedure—Motion for judgment notwithstanding the verdict—Civ.R. 50(B),*
*applied.*

(No. 97-379—Submitted February 4, 1998—Decided May 13, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 69523.

————————————

{¶ 1} This case arises from a complaint filed by appellant, Dorothy Texler, against appellee, D.O. Summers Cleaners & Shirt Laundry Company, alleging negligence by appellee causing Texler to fall. Texler is the owner and manager of Texler Photography, a business in Solon, Ohio. At the trial, she testified that at approximately noon on Saturday, August 21, 1993, she and her employee Dorothy Rule left the photography store to walk to lunch. They had walked the same route numerous times on prior occasions. This route across the shopping center required them to make a right-hand turn around the corner of appellee's Solon store, and to walk on a sidewalk adjacent to the side of the laundry.

{¶ 2} Appellee's store manager Dennis J. Meyers testified that there was a heavy, solid metal service door located on the side of the laundry along which the women walked. Meyers explained that the sidewalk located alongside the building is seventy-seven inches wide, and that the service door is forty-three and a half inches wide. Consequently, when the door is opened perpendicular to the building, it extends out over half the sidewalk. On the hotter days of summer, the employees of the laundry kept this door open for ventilation. The employees used a bucket containing concrete blocks, which protruded over the top of the bucket and out the

side through a cut in the bucket to hold open the door.

{¶ 3} Rule testified that on August 21, 1993, the day the women walked to lunch, the service door was propped open approximately two to three feet by this bucket filled with concrete blocks. She stated that she saw the door and the bucket when she and appellant turned the corner at the laundry.

{¶ 4} Appellant testified that she and Rule were walking at a normal pace, perhaps even a little slower than normal, and that the area was quite busy with pedestrians at the time. Appellant testified that she was paying attention to her path but that she did not expect the bucket to be there. She was looking straight ahead, rather than down at the ground. Appellant remembered that the bucket was located so that part of it protruded beyond the door, into her path on the sidewalk. As the women passed by the door and the bucket, Texler fell, injuring her wrist.

{¶ 5} Beginning on May 10, 1995, the case proceeded to a jury trial. The jury answered interrogatories and found in favor of Texler. The answers to the interrogatories show that six of the eight jurors by a preponderance of the evidence found that appellee was one hundred percent negligent and that the negligence was a proximate cause of injury to Texler. The same six jurors by a preponderance of the evidence found Texler zero percent negligent and found damages sustained by Texler to be $75,000. On May 17, 1995, the court entered judgment in favor of Texler and ordered appellee to pay Texler damages of $75,000.

{¶ 6} On May 31, 1995, appellee filed a motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial. On August 8, 1995, the trial court denied this motion. Appellee appealed this decision to the Cuyahoga County Court of Appeals, which on November 27, 1996, reversed the trial court's judgment and entered judgment for appellee.

{¶ 7} The cause is now before this court upon the allowance of a discretionary appeal.

———————————

*Lester S. Potash*, for appellant.

*Glowacki & Associates Co., L.P.A., James L. Glowacki* and *James J. Imbrigiotta*, for appellee.

*Mark Kitrick Co., L.P.A.,* and *Mark Kitrick*, urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 8} The issue presented by this case is whether, on the facts of this case, the trial court should have decided upon a motion for judgment notwithstanding the verdict that as a matter of law the appellant contributed over fifty percent of the negligence involved in the accident and was therefore not entitled to judgment.

{¶ 9} The standard for granting a motion for judgment notwithstanding the verdict or in the alternative for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256, fn. 2, citing *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 318-319, 662 N.E.2d 287, 294; and *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338. Civ.R. 50(A)(4) states:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

{¶ 10} In *Wagner*, we quoted *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284-285, 21 O.O.3d 177, 178-179, 423 N.E.2d 467, 469, in setting forth the standard for deciding a motion for a directed verdict or for a judgment

notwithstanding the verdict:

"The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. *Kellerman v. J.S. Durig Co.* (1964), 176 Ohio St. 320 [27 O.O.2d 241, 199 N.E.2d 562] * * *.' *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368]."

{¶ 11} In *Wagner*, we stated that " '[t]he "reasonable minds" test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of [the claims of the party against whom the motion is directed]. * * * A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.' *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St.2d 66, 68-69, 23 O.O.3d 115, 116-117, 430 N.E.2d 935, 938." *Wagner*, 77 Ohio St.3d at 119-120, 671 N.E.2d at 255-256.

{¶ 12} We thus must determine whether reasonable minds could come to the one conclusion that appellant contributed more than fifty percent of the negligence involved in the accident so that, under Ohio's comparative negligence laws, appellant was not entitled to judgment. We hold instead that reasonable minds could differ as to the allocation of negligence.

{¶ 13} In order to establish actionable negligence, the plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom. *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769, 772, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180, 472 N.E.2d 707, 710; *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732; and *Feldman*

*v. Howard* (1967), 10 Ohio St.2d 189, 39 O.O.2d 228, 226 N.E.2d 564.

{¶ 14} The court of appeals in the case *sub judice* held as a matter of law that appellant had a duty to take due care in observing hazards in her path (to "watch her step" in effect) that exceeded appellee's duty to keep dangerous obstructions out of the way of pedestrians. The existence of a particular party's duty " 'depends on the foreseeability of the injury. * * * ' *Menifee v. Ohio Welding Products, Inc., supra*, at 77, 15 OBR at 180, 472 N.E.2d at 710, citing *Ford Motor Co. v. Tomlinson* (C.A.6, 1956), 229 F.2d 873, 59 O.O. 345; *Gedeon v. E. Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E. 924; see, also, *Hill v. Sonitrol of Southwestern Ohio, Inc.* [(1988), 36 Ohio St.3d 36, 39, 521 N.E.2d 780, 783]. The court in *Menifee, supra*, set forth the following test to be used in order to determine foreseeability: '[W]hether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.' *Menifee, supra*, at 77, 15 OBR at 180, 472 N.E.2d at 710, citing *Freeman v. United States* (C.A.6, 1975), 509 F.2d 626; *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 38 O.O.2d 294, 224 N.E.2d 131; *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859." *Fed. Steel & Wire Corp.*, 45 Ohio St.3d at 174, 543 N.E.2d at 772-773.

{¶ 15} The legal issue presented here is whether a reasonably prudent person would have anticipated that an injury would result from walking normally on that sidewalk. This court has held that "[a] pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered but is not, as a matter of law, required to look constantly downward * * *." *Grossnickle v. Germantown* (1965), 3 Ohio St.2d 96, 32 O.O.2d 65, 209 N.E.2d 442, paragraph two of the syllabus. This care requires a pedestrian "to use his senses to avoid injury while walking on a sidewalk, but this does not mean that he is required as a matter of law to keep his eyes upon the sidewalk at all times. It may be necessary to keep a lookout for traffic and other pedestrians to avoid

collision." *Griffin v. Cincinnati* (1954), 162 Ohio St. 232, 238, 55 O.O. 118, 120, 123 N.E.2d 11, 15. See, also, *Cash v. Cincinnati* (1981), 66 Ohio St.2d 319, 325-326, 20 O.O.3d 300, 304, 421 N.E.2d 1275, 1279; *Burge v. Pepsi-Cola Bottling Co. of Cincinnati* (1971), 26 Ohio St.2d 237, 55 O.O.2d 478, 271 N.E.2d 273, syllabus, and 26 Ohio St.2d at 241-242, 55 O.O.2d at 480, 271 N.E.2d at 275.

{¶ 16} More recently, this court has continued to hold that the question of whether the contributory negligence of a plaintiff is the proximate cause of the injury is an issue for the jury to decide pursuant to the modern comparative negligence provisions of R.C. 2315.19(A)(1). *Junge v. Brothers* (1985), 16 Ohio St.3d 1, 4, 16 OBR 254, 256, 475 N.E.2d 477, 480. See, also, *Cash*, 66 Ohio St.2d at 326, 20 O.O.3d at 304, 421 N.E.2d at 1280.

{¶ 17} After construing the evidence most strongly in favor of appellant (the party against whom the motion for judgment notwithstanding the verdict was directed), we find that reasonable minds could differ as to the proper distribution of negligence between the parties. Testimony indicated that the propped-open service door blocked at least half the width of the sidewalk and that the bucket used to prop open the door contained protruding concrete blocks that could cause serious injuries. Although appellant testified that she did not actually see the concrete bucket, she stated that she was walking at a normal or a slower-than-normal pace that day and that she was taking due care as she walked, looking straight ahead, rather than down at the ground. Thus, there is adequate evidence in the record of substantial probative value that supports the jury's finding that appellant was taking the proper amount of care to avoid obstructions and that appellee was one hundred percent negligent in the manner by which the bucket of concrete propped open the door, and that this negligence proximately caused the accident.

{¶ 18} We therefore reverse the judgment of the court of appeals on the issue addressed in this opinion. We remand this cause to the court of appeals for that court to review the remaining assignments of error raised by both parties below,

which were found to be moot and not addressed.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**COOK, J., dissenting.**

{¶ 19} I agree with the judgment of the court of appeals and thus respectfully dissent. By Rule's testimony, we know that the door and the offending bucket were visible to Texler as she walked along the sidewalk where she fell. Texler herself testified that she remembered that the bucket protruded into her path. Construing that evidence most strongly in Texler's favor, reasonable minds could not differ on the issue of whether Texler's proportion of negligence exceeded fifty percent.

{¶ 20} I would affirm the judgment of the court of appeals.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

———————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 21} Because the uncontroverted facts in this case, construed most strongly in Texler's favor, support the court of appeals' finding that the trial court should have granted a directed verdict or judgment notwithstanding the verdict in favor of appellee, I respectfully dissent.

{¶ 22} The record at trial established that Texler worked in the same shopping complex as D.O. Summers Cleaners and frequently walked past the business. Texler knew that D.O. Summers often propped open its side door with an object. Texler admitted that, on the day of her fall, she saw the door propped open. Dorothy Rule, walking next to Texler, testified that she saw the bucket about

forty feet away. The bucket was obvious. Texler does not recall any obstructions to her vision and she admits she would have seen the bucket had she looked.

{¶ 23} The majority articulates the issue as whether "a reasonably prudent person would have anticipated that an injury would result from walking normally on that sidewalk." The majority concludes that there was adequate evidence in the record to support the jury's finding that Texler was using the proper amount of care to avoid the bucket. However, a reasonably prudent person who should have seen a five-gallon bucket in plain view being used to prop open a large metal door has a duty to exercise due care to avoid the bucket. The law requires that if a pedestrian sees a hazard on the sidewalk, he or she has a duty to avoid it. *Grossnickle v. Germantown* (1965), 3 Ohio St.2d 96, 32 O.O.2d 65, 209 N.E.2d 442. If it is clearly discernible from a reasonable distance, a person's failure to see and avoid it constitutes negligence. *Griffin v. Cincinnati* (1954), 162 Ohio St. 232, 55 O.O. 118, 123 N.E.2d 11.

{¶ 24} Texler had a duty to discover and protect herself from an open and obvious hazard on the sidewalk. *Raflo v. Losantiville Country Club* (1973), 34 Ohio St.2d 1, 63 O.O.2d 1, 295 N.E.2d 202; *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589. Texler's failure to avoid the bucket because she did not look down at the sidewalk was no excuse, particularly when she admitted that she saw the door propped open when approaching and would have seen the bucket had she looked down. *Raflo; Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37. Consequently, Texler's injury was foreseeable and was the natural and probable consequence of her failure to exercise due care to avoid a discernible hazard on the sidewalk. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 143, 539 N.E.2d 614, 617.

{¶ 25} Property owners and shopkeepers frequently place obstacles in the path of pedestrians—a display of sale items in a grocery aisle; a mop, bucket and sign warning "wet floor"; or a grocery cart or empty box in the middle of an aisle.

Individuals also leave objects in the path of pedestrians—a broom, suitcase, briefcase, or open door. We expect that something obvious and apparent will be seen and avoided by a reasonably prudent person who walks by. Any negligence attributable to placing an object, open and obvious, in the path of another could not exceed the negligence of a pedestrian who should have seen the object yet does not exercise due care to avoid colliding with it. The majority's opinion creates a dangerous precedent, which, in effect, alleviates a pedestrian's responsibility for exercising due care.

{¶ 26} Consequently, I would affirm the judgment of the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.

————————————