I must respectfully dissent with the majority opinion in this case. Plaintiff-appellant claims that the trial court erred in granting summary judgment to defendant-appellee, the Heritage Co. Plaintiff argues that there remain genuine issues of material fact relating to her claim of negligence against defendant. I agree.
In February 1998, plaintiff[4] was employed as a cleaning woman for Janitorial Services, Inc., not a party here. Plaintiff was injured when she moved a box and a large metal shelving end-cap fell on top of her head. Plaintiff states that, on the date in question, she arrived at work at about 4 p.m. with her husband, who also worked for the same company. Plaintiff and her husband had been working for Janitorial for about two years and had always cleaned the same building during that time. It is undisputed that at the time of plaintiff's injury the building was under defendant's control.
As she started work, plaintiff walked into an adjacent garage area, inside of which was a small storage room. Steven Popelsky, an employee of defendant, testified in deposition that the lighting in the garage was "very strong." Plaintiff stated, however, that, using the light from the garage, she entered the storage room which was "really dark," but she could see the floor where she was walking and could distinguish the garbage bags and Windex on the shelves inside the room. Plaintiff testified that she has bad vision, is nearsighted, and on the day of the accident did not have glasses. The evidence is unclear about whether she owned glasses at the time and simply chose not to wear them or she did not even own any glasses when she was injured.
Plaintiff, as usual, entered the storage room to get toilet paper. She testified that she had been in the storage room many times before to gather cleaning supplies. Before the accident, there were boxes of toilet paper stacked high, so that she could not tell whether there was anything behind them. There is no dispute that the metal end-cap that fell on plaintiff was leaning against a wall and was behind at least one box. At deposition, plaintiff testified:
 Q: As you walked towards the box of toilet paper, did you see the piece of metal leaning against the wall?
 A: She[5] never pay attention and so she didn't see that day as well.
* * * * * * * * * * * * * * *
 Usually it used to be a lot of boxes with toilet paper, so she couldn't see much, what was behind the — those boxes. And when — that day just one box left. That's why when she took it off, this piece fell on her.
Plaintiff also stated that she pulled the box towards the doorway so that she could see inside it (in order to see how much toilet paper was left). When she moved the box, the metal cap fell on her. Plaintiff testified that she did not know the metal end-cap was there until it fell on her. She also stated that she did not know that there was a light switch inside the storage room. Nor is there any evidence that defendant ever told or showed plaintiff or her husband where the switch was located in the storage room.
Defendant, on the other hand, admitted to having notice of the metal end-cap through its employee, Popelsky. Popelsky stated that inside the storage room he had seen the metal item leaning "at an angle." He also states that he knew the cleaning crew put boxes "in front of the end-cap."
Under Civ.R. 56, we must view the evidence in a light most favorable to the non-movant, plaintiff, and decide whether there remain genuine issues of material fact which only the trier of fact can decide. In order to maintain a claim for negligence, a plaintiff must demonstrate a duty of care and that the breach of that duty directly and proximately caused the injury. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 693 N.E.2d 271; Nice v. Meridia Hillcrest Hosp. (Aug. 2, 2001), Cuyahoga App. No. 79384, unreported, 2001 Ohio App. LEXIS 3417. An owner of premises owes an invitee a duty to exercise ordinary care and to maintain the premises in a reasonably safe condition. Lightv. Ohio University (1986), 28 Ohio St.3d 66, 502 N.E.2d 611; Kubiak v.Wal-Mart Stores, Inc. (1999), 132 Ohio App.3d 436, 725 N.E.2d 334. Further, in order for an invitee to show that the premises owner breached its duty, the invitee must show that either the owner created the condition and had actual knowledge of the condition or the danger existed for a sufficient length of time to establish constructive knowledge of the condition. Nice, supra; Baudo v. Cleveland Clinic Foundation (1996),113 Ohio App.3d 245, 680 N.E.2d 733.
An invitee also has a corresponding duty to avoid open and obvious hazards which will foreseeably cause injury. Texler, supra. Ultimately, the question of whether a plaintiff-invitee failed to avoid an open and obvious hazard involves the further question of whether the plaintiff was contributorily negligent. Because this analysis requires the fact finder to apportion each party's percentage of negligence, it necessarily involves questions related to the issue of causation. Schindler v. Gale'sSuper-market, Inc. (2001), 142 Ohio App.3d 146. I agree with the majority that the issue of causation is best determined by the jury unless the evidence is so compelling that reasonable minds can reach but one conclusion. I do not agree with the majority, however, that the evidence in this case compels only one conclusion.
"A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed * * *." Hounshell v. American StatesInsurance Co. (1981), 67 Ohio St.2d 427, 433, 424 N.E.2d 311. Moreover, a trial court should not grant a motion for summary judgment if "the record is not sufficiently developed to make it ripe for summary judgment."Trossi v. Nationsrent of Ohio, Inc. (June 14, 2000), Tuscarawas App. No. 1999AP110062, unreported, 2000 Ohio App. LEXIS 2685; Lawson v. MayDepartment Store, (Nov. 27, 2001), Mahoning App. No. 00 CA 191, unreported, 2001 Ohio App. LEXIS 5325 (absent proof of a material fact, summary judgment is premature.)
In the case at bar, resolution of numerous questions about the lighting in the storage room is central to deciding this case. The lighting conditions existing at the time of plaintiff's injury are material to the merits of plaintiff's claims. Because there are too many unanswered questions about the storage room lighting the day of plaintiff's injury, the trial court erred in granting summary judgment. These various questions cannot be resolved on the record as it currently exists.
A central question in this case is whether the lighting was sufficient for her to see either the end piece or the light switch. The light she worked from was not overhead, but rather came through a door behind her. It is not enough to know she could discern some garbage bags and Windex. To draw any conclusions, we must know the location of these items, as well as the end piece, in relation to the light from the doorway. Nothing in the record says they were equally illuminated.
Nor does the record indicate the direction of or location of the light. A light located outside to the side of the door, for example, could illuminate one side of the room and not the other. Similarly, a light higher than the door might illuminate the floor and a box on the floor, but not the upper back part of the room. Or the light might permit plaintiff to see the side of a box, but not inside or, for that matter, behind. The location of the light switch relative to the light from the doorway and the position of plaintiff is similarly murky.
The defendant argues that the circumstances justify inferring defendant had notice that the metal end-cap was stored inside the storage room "at an angle." The record is entirely too vague to conclude what plaintiff should have seen. In any event, what she should have seen is a jury question. Moreover, whether the metal end-cap, stored in the way it was, constitutes an unreasonable risk of harm is also a jury question. Popelsky's testimony, coupled with plaintiff's, strongly indicates that because boxes were usually stacked high in front of the metal end-cap she would not have reason to expect it and, therefore, it may not have been "open and obvious."
As to this same defense, there are genuine issues of material fact remaining about whether, by means of the ambient light from the garage, plaintiff actually could see sufficiently inside the storage room to appreciate the open and obvious nature of the metal piece. Next, as a reasonably prudent person, could she have anticipated that an injury was likely to occur if she moved the box. Regardless of which question one focuses upon and regardless of an answer in the affirmative, there is still the issue of whether plaintiff's negligence outweighs that of the defendant's. This question, based upon the facts in this case, cannot be resolved on summary judgment.
Defendant also references the "step-in-the-dark-rule," which generally holds that one who intentionally steps into total darkness, without investigation, may be contributorily negligent for any injuries suffered. Posin v. A.B.C. (1976), 45 Ohio St.2d 271 . Defendant concedes that this rule typically presents jury questions related to issues about the degree of darkness involved. These same issues arise under the open and obvious doctrine. In other words, the same question remains: how open and obvious was the end piece to a prudent worker walking into a room with only the light from the doorway. Either way, summary judgment is inappropriate to resolve questions about the extent of existing light at the time of injury and about what was lit.
There simply are too many unresolved questions related to the lighting conditions inside the storage room. The record is far too undeveloped to justify the trial court's premature grant of summary judgment to defendant. I would reverse and allow this case to proceed to trial.
[4] In her deposition, plaintiff testified that she was born in Ukraine in 1967 and that she has been in this country for ten years. During her deposition, plaintiff used an interpreter who had a weak command of English grammar as is obvious from the transcript. Some of plaintiff's testimony, therefore, is difficult to understand.
[5] The interpreter uses the third person "she." Apparently, the interpreter uses the third person ("she") to translate the plaintiff's answer, presumably given in the first person ("I").