OPINION
{¶ 1} Plaintiff-appellant Greenbrier III Condominium Owner's Association (hereinafter Greenbrier) appeals from a directed verdict rendered in favor of defendants-appellees Richard and Jenny Ebner. Greenbrier contends that the trial court erred in finding that Greenbrier was required to prove that the removal of certain interior walls by the Ebners created a structural defect, in order to establish a violation of the Declaration of Condominium Ownership. Greenbrier contends that the Ebners violated the Declaration, because they altered a common area by removing an interior wall in their family unit without written consent of the Association.
 {¶ 2} When the Declaration is construed strictly in favor of the unit-owner, the common area consists of main and supporting walls, but not interior walls that are neither structural, in the sense of being load-bearing, nor main, in the sense of separating one unit from another unit or from a common area. The record shows that there was no evidence presented showing that the interior wall removed by the Ebners was in the common area, because there was no evidence that the interior wall removed was a main or supporting wall. Construing the evidence in a light most favorable to Greenbrier, we conclude that the trial court did not err in denying the Ebners' motion for a directed verdict regarding the removal of the interior wall by the Ebners.
 {¶ 3} Greenbrier also contends that the trial court erred in determining that the assessments made by the Association against the Ebners' unit, as set forth in the certificate of lien, were not made by the association in compliance with the Declaration. After reviewing the Declaration and Greenbrier's By-Laws, we conclude that there are no clear requirements therein describing the process to be used by the Association in adopting assessments. Without considering the weight of the evidence or the credibility of the witnesses, we conclude that there exists evidence having substantial probative value in support of Greenbrier. Construing the evidence most strongly in favor of Greenbrier, we conclude that the trial court erred in granting the Ebners' motion for a directed verdict regarding its determination that the assessments made by the Association against the Ebners' unit, as set forth in the certificate of lien, were not made by the Association in compliance with the Declaration.
 {¶ 4} Greenbrier contends that the trial court erred in finding that its claims were barred by the doctrines of estoppel or laches. Greenbrier contends that its claims are not barred by the doctrine of laches, because there was no evidence presented showing that the Ebners were prejudiced by the delay. Even if Greenbrier delayed in asserting its claim, we cannot find any evidence in the record establishing that the Ebners were prejudiced by the delay. There being no evidence in the record of prejudice, we conclude that Greenbrier's claims are not barred by the doctrine of laches.
 {¶ 5} Greenbrier also contends that its claims are not barred by the doctrine of equitable estoppel, because there was no factual misrepresentation. Even if Greenbrier did make a factual misrepresentation, we find nothing in the record to establish that the Ebners suffered a detriment. There being no evidence in the record of detriment, we conclude that Greenbrier's claims are not barred by the doctrine of estoppel.
 {¶ 6} Accordingly, that portion of the judgment of the trial court rendering a directed verdict in favor of the Ebners on Greenbrier's claim for an award of an assessment for certain expenses it incurred is reversed, the judgment of the trial court is affirmed with respect to the directed verdict in favor of the Ebners on Greenbrier's claim that the Ebners violated the Declarations, and this cause is remanded for further proceedings consistent with this opinion.
 I {¶ 7} Greenbrier III Condominium Owner's Association is an association consisting of the unit owners of the Greenbrier III Condominium. Greenbrier III Condominium consists of three family units. Richard and Jenny Ebner are the owners of one of the family units, 2441 Red Coach Drive. After moving in, the Ebners removed an interior wall within their family unit.
 {¶ 8} In April, 2001, Greenbrier filed a certificate of lien against the Ebners asserting that the Ebners owed Greenbrier $788.50 for common expenses and late charge assessments and $185 for repairs to the garage door frame. In October, 2001, Greenbrier filed suit against the Ebners, seeking an involuntary sale of the Ebners' unit, because the Ebners violated Greenbrier's Declaration of Condominium Ownership by failing to pay the common expenses and late charge assessments, the repair expense for the garage door frame, and other expenses, for a total amount of $2,042.50. Greenbrier also sought an involuntary sale of the Ebners' unit, because the Ebners violated the Declaration by removing an interior wall within their family unit.
 {¶ 9} This case proceeded to a bench trial. At the close of Greenbrier's case, the Ebners moved for a directed verdict. The trial court granted the Ebners' motion for a directed verdict, dismissed Greenbrier's complaint, assessed costs of the proceeding against Greenbrier, and cancelled the certificate of lien. The trial court found that Greenbrier failed to show that the alterations made by the Ebners to their family unit created a structural defect. The trial court further found that Greenbrier failed to establish that the assessments were made and adopted by the Association pursuant to the terms of the Declaration. The trial court also found that Greenbrier's claims were barred by the doctrines of estoppel and laches.
 {¶ 10} From the judgment of the trial court, Greenbrier appeals.
 II {¶ 11} Greenbrier's first assignment of error is as follows:
 {¶ 12} "The court below erred in finding that plaintiff was required to prove that the removal of the interior condominium walls by defendants ebner created a structural defect in order to establish a violation of the declaration."
 {¶ 13} Greenbrier contends that the trial court erred in granting the Ebners' motion for a directed verdict based on Greenbrier's failure to establish that the removal of the interior walls by the Ebners created a structural defect in violation of the Declaration of Condominium Ownership.
 {¶ 14} A motion for a directed verdict must be granted where the court, construing the evidence most strongly in favor of the nonmoving party, finds that reasonable minds could come to but one conclusion, upon any determinative issue, and that conclusion is adverse to the nonmoving party. Texler v. D.O. SummersCleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 679,693 N.E.2d 271. A motion for a directed verdict must be denied where there is substantial, competent evidence from which a reasonable mind could find in favor of the nonmoving party. Id. The court must not consider the weight of the evidence or the credibility of the witnesses but must determine whether there exists any evidence of substantial probative value in support of the nonmoving party. Id. A motion for a directed verdict presents a question of law in that the materiality of the evidence is examined rather than the conclusions to be drawn from the evidence. Id. at 680.
 {¶ 15} Greenbrier contends that the Ebners violated Section J of Article 4, Covenants and Restrictions as to Use and Occupancy, in the Declaration, which provides, in pertinent part, that "[n]othing shall be altered or constructed in or removed from the common areas and facilities except as hereinafter provided and except upon the written consent of the association." Greenbrier contends that the Ebners violated Article 4, Section J, because they altered a common area in their condominium by removing an interior wall without written consent of the association.
 {¶ 16} According to Article 1 in the Declaration, Greenbrier III Condominium consists of three freehold estates, referred to as "family units," and one freehold estate, referred to as the "common areas and facilities." Article 1, Section A, provides, in pertinent part, that the family units consist "of all the space bounded by the undecorated surfaces of the perimeter walls, floors and ceilings of each such family unit, including the vestibule, if any, immediately adjacent to each such family unit, projected, if necessary, by reason of structural divisions such as interior walls and other partitions[.]" The family units also include "[a]ll spaces between interior walls, floors and ceilings, including the space occupied by structural and components parts of the building * * * but excepting, therefrom * * * [t]he structural and component parts of all interior walls, floors, and ceilings, except the decorated surfaces thereof[.]" Article 1, Section B(1)(a) provides, in pertinent part, that "[t]he entire balance of the land and improvements thereon, including, but not limited to * * * main and supporting walls * * * are hereby declared and established as the common area and facilities."
 {¶ 17} In short, the family unit does not consist of the structural and component parts of all interior walls, and the common areas and facilities include the main and supporting walls.
 {¶ 18} "Condominium Declarations established pursuant to Ohio's Condominium Act must be strictly construed, since the condominium concept depends upon reasonable use and occupancy restrictions." Carrollton Woods Condominium Homeowners Ass'n v.Procario, Montgomery App. No. 12743, 1992 WL 112955, at *3, citation omitted.
 {¶ 19} Although the Ebners did remove an interior wall without written consent of the Association, there was no evidence presented that the interior wall removed was a main or supporting wall. Susan Hillman, unit owner of 2445 Red Coach Drive, testified as follows:
 {¶ 20} "Q. Okay. Now, speaking on — as the association, what is your understanding of why the association has sued Mr. and Mrs. Ebner here today?
 {¶ 21} "A. Speaking as an association, the association owns the condo building; and because the walls were removed, it compromises the structure of the building for all three units, not just one.
 {¶ 22} "Q. Let me try to rephrase my question to —
 {¶ 23} "A. Okay.
 {¶ 24} "Q. Have Mr. and Mrs. Ebner failed to pay any assessment due from their unit to the association?
 {¶ 25} "A. Yes, they have. * * *
 {¶ 26} "* * *
 {¶ 27} "Q. Miss Hillman, another issue which is to be considered by the Court here this morning has to do with certain alterations alleged to be made to the interior of Mr. and Mrs. Ebner's condominium unit.
 {¶ 28} "Can you briefly describe for the Court your personal knowledge of what those alterations consisted of?
 {¶ 29} "The alterations on the condo owned by the Ebners was removal of the interior first level supporting walls of the condo.
 {¶ 30} "MR. FLACK: I'm going to object, Your honor, unless she has some personal knowledge or expertise to testify that those were structural.
 {¶ 31} "THE COURT: She can make — say `removal of a wall.'
 {¶ 32} "MR. FLACK: Right. I'm not objecting to her saying that. But she said —
 {¶ 33} "THE COURT: Okay. I'll accept that.
 {¶ 34} "MR. FLACK: She said `supporting.' I would ask that the Court strike that.
 {¶ 35} "THE COURT: I'll sustain the objection to the word `supporting.'
 {¶ 36} On cross-examination, Hillman testified as follows:
 {¶ 37} "Q. Now, do you have any evidence that the walls that were removed or changed or altered from Mr. Ebner's condominium have compromised the integrity of that structure?
 {¶ 38} "A. Personally?
 {¶ 39} "Q. Yes.
 {¶ 40} "A. No.
 {¶ 41} "Q. Did you hire anyone to do that?
 {¶ 42} "A. No.
 {¶ 43} "Q. Do you have an engineering degree?
 {¶ 44} "A. No."
 {¶ 45} Judy Delledone, unit owner of 2443 Red Coach Drive, testified as follows:
 {¶ 46} "Q. Okay. When did you first become aware that there were alterations made to the interior walls of Mr. and Mrs. Ebner's unit?
 {¶ 47} "A. The same meeting, when we had a meeting at their house.
 {¶ 48} "Q. Okay. And at that time did that strike you as being any kind of a problem?
 {¶ 49} "A. It did for me because the walls that — some of the walls he removed were sound walls, I think.
 {¶ 50} "MR. FLACK: I'll object, Your Honor, ask that it be stricken.
 {¶ 51} "THE COURT: Well, she just said she had an opinion. I don't think she's giving an expert opinion here. She's just saying she assumed; but as a lay person, she can say that."
 {¶ 52} This was the only testimony given regarding the interior wall the Ebners removed. The Declaration requires written consent by the association to alter a common area. When the Declaration is strictly construed in favor of the unit owner, the common area consists of main and supporting walls, but not necessarily all interior walls. A reasonable strict construction of the phrase "main and supporting walls" would construe "main" walls as constituting walls separating one unit from another, or separating one unit from common areas, and would construe "supporting" walls as constituting structural, load-bearing walls. If all interior walls were construed as coming within the ambit of the phrase "main and supporting walls," then there would be no walls other than "main and supporting walls." If the provision is to be strictly construed, the restrictive adjectives "main and supporting" must mean something, and must distinguish walls that are "main" or "supporting" from walls that are neither. The record shows that there was no evidence presented that the interior wall removed by the Ebners was a main or supporting wall.
 {¶ 53} Construing the evidence in a light most favorable to Greenbrier, we conclude that the trial court did not err in granting the Ebners' motion for a directed verdict regarding the removal of the interior wall by the Ebners. Therefore, Greenbrier's first assignment of error is overruled.
 III {¶ 54} Greenbrier's second assignment of error is as follows:
 {¶ 55} "The court below erred in determining that the assessments made by the association against the Ebners' unit as set forth in the certificate of lien were not made by the association in compliance with the declaration."
 {¶ 56} Greenbrier contends that the trial court erred in finding that the assessments were improperly adopted, because it "would expect the minutes to show a motion, specifically what the motion requested, a second, and a vote favoring or disfavoring the motion." Greenbrier contends that the Declaration does not set forth the process to be used by the Association to adopt assessments at its meetings, and therefore, the adoption of assessments by the Association at its meetings could be made using any reasonable means. The Ebners contend that the assessments are invalid, because they were adopted in violation of Greenbrier's By-Laws.
 {¶ 57} After reviewing the Declaration and the By-Laws, we find no clear requirements set forth therein describing the process to be used by the Association in adopting assessments. For the reasons that follow, we also reject each of the Ebners' arguments that the assessments were adopted in violation of the By-Laws.
 {¶ 58} The Ebners contend that the assessments were improperly adopted in violation of the By-Laws, because there was no documentation indicating that there was a vote on imposing the assessments. After reviewing the Declaration and the By-Laws, we conclude that there is no requirement that there be documentation of a vote. In addition, the record shows that the assessments and the decision to hire an attorney were agreed upon by the unit owners who were present at the October 2000 meeting.
 {¶ 59} Article 1, Section 4(c), of the By-Laws provides, in pertinent part, that "at any meeting of the members of the association, the members of the association entitled to exercise a majority of the voting power of the association present in person or by proxy shall constitute a quorum for such meeting[.]" Article 1, Section 3, of the By-Laws provides that "[t]here shall be one voting member for each unit ownership," and that "[e]ach voting member shall be entitled to the number of votes equal to that unit's percentage of interest[.]" Article 1, Section B(3), of the Declaration provides that each of the three unit owners has approximately a one-third interest.
 {¶ 60} Hillman testified that at the October 2000 meeting, "we discussed making assessments to pay for legal fees that we knew that the association would incur, which is split three ways; * * * and the late fees from the monthly condo assessments[.]" Delledonne testified that at the October 2000 meeting, "we agreed there had to be [legal fee] assessments of all three units." The uncontradicted testimony shows that Hillman and Delledonne, the two unit owners present at the October 2000 meeting, each with approximately a one-third interest, agreed upon imposing the assessments.
 {¶ 61} The Ebners also contend that the assessments were improperly adopted in violation of the By-Laws, because there was no documentation indicating that a thirty-day notice of the October 2000 meeting had been sent to the Ebners.
 {¶ 62} After reviewing the Declaration and the By-Laws, we conclude that there is no requirement that there be documentation showing thirty-days notice was given. Article 1, Section 4(b), of the By-Laws provides that "[a]dvance notice of at least 30 days shall be given of annual or special meetings of the members of the Association, stating in writing the time, place, and purpose of such meeting[.]" Both Hillman and Delledonne testified that the October 2000 meeting was a "special" meeting. Although there is no documentation showing that the Ebners were given a thirty-day notice of the October 2000 meeting, both Hillman and Delledonne testified that thirty days notice of the October 2000 meeting was given to the Ebners.
 {¶ 63} The Ebners further contend that the Declaration does not permit the assessments imposed, because the By-Laws do not permit "special" assessments. We disagree.
 {¶ 64} Article 5, Section A, of the Declaration provides, in pertinent part, that "[a]ssessments for the maintenance, repair and insurance of the common areas and facilities and for the insurance of the family units, together with the payment of the common expenses, shall be made in the manner provided herein, and in the manner provided in the bylaws." Article 5, Determination and Payment of Assessments, of the By-Laws, provides that "[i]t shall be the duty of every unit owner to pay his proportionate share of the expenses of administration, maintenance and repair of the common areas and facilities and of the other expenses provided for herein." However, in the By-Laws, Article 4, Section 1(H), provides that "[m]aintenance and repair of any unit if such maintenance or repair is necessary, in the discretion of the association, to protect the common areas and facilities, or any other portion of a building, and the owner or owners of said unit have failed or refused to perform said maintenance or repair within a reasonable time after written notice of the necessity of said maintenance or repair delivered by the association to said owner or owners, provided that the association shall levy special assessment against such unit owner for the cost of said maintenance or repair." Therefore, the By-Laws do permit special assessments under certain circumstances.
 {¶ 65} Without considering the weight of the evidence or the credibility of the witnesses, considerations that are not proper in reviewing the propriety of a directed verdict, we conclude that there is evidence of substantial probative value to support a finding in favor of Greenbrier on the assessments issue. Construing the evidence most strongly in favor of Greenbrier, we conclude that the trial court erred in granting the Ebners' motion for a directed verdict regarding its determination that the assessments made by the association against the Ebners' unit, as set forth in the certificate of lien, were not made by the Association in compliance with the Declaration.
 {¶ 66} Therefore, Greenbrier's second assignment of error is sustained.
 IV {¶ 67} Greenbrier's third assignment of error is as follows:
 {¶ 68} "The trial court erred in finding that plaintiffs' claims against defendants were barred by the doctrines of estoppel and laches."
 {¶ 69} Greenbrier contends that its claims are not barred by the doctrine of laches, because there was no evidence presented showing that the Ebners were prejudiced by the delay. Greenbrier also contends that its claims are not barred by the doctrine of equitable estoppel, because there was no factual misrepresentation. The Ebners have not responded to Greenbrier's third assignment of error.
 {¶ 70} The trial court concluded that Greenbrier's claims are barred by the doctrines of estoppel or laches, because all of the unit owners had committed violations of the Declaration without any action being taken. Thus, the trial court concluded that Greenbrier waived enforcement of the rules in the Declaration.
 {¶ 71} "Laches is an equitable doctrine barring an action because of an unexcused delay that prejudices an adversary. The elements of laches are: (1) an unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury involved, and (4) prejudice to the other party. State ex rel.Meyers v. Columbus (1995), 71 Ohio St.3d 603, 646 N.E.2d 173."Atwater v. King, Greene App. No. 02CA45, 2003-Ohio-53, at ¶ 19.
 {¶ 72} Even if Greenbrier delayed in asserting its claim, we have found no evidence in the record that the Ebners were prejudiced by the delay. "The prejudice must be material, and it may not be inferred from a mere lapse of time." Atwater, at ¶ 19. There being no evidence in the record of prejudice, we conclude that Greenbrier's claims are not barred by the doctrine of laches.
 {¶ 73} Equitable estoppel is established where there is a misleading factual misrepresentation made that induces reasonable reliance and causes detriment to the relying party. Doe v. BlueCross Blue Shield of Ohio (1992), 79 Ohio App.3d 369, 379,607 N.E.2d 492.
 {¶ 74} Even if there was a factual misrepresentation made by Greenbrier, we have found no evidence in the record that the Ebners suffered a detriment. There being no evidence in the record of detriment, we conclude that Greenbrier's claims are not barred by the doctrine of estoppel.
 {¶ 75} In addition, Greenbrier's By-Laws, Article 7, Section 5, state that "[n]o covenants, restrictions, conditions, obligations or provisions contained in the declaration of these bylaws shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur." The Declaration has a similar provision in Article 12, Section B. Based on the foregoing, we conclude that Greenbrier's claims are not barred by the doctrines of laches or estoppel.
 {¶ 76} Greenbrier's third assignment of error is sustained.
 V {¶ 77} Greenbrier's first assignment of error having been overruled, and its second and third assignments of error having been sustained, the directed verdict in favor of the Ebners on Greenbrier's claim that the Ebners violated the Declarations by removing interior walls is affirmed, the directed verdict in favor of the Ebners on Greenbrier's claims for certain assessments is reversed, and this cause is remanded for further proceedings consistent with this opinion.
Brogan and Young, JJ., concur.