OPINION
{¶ 1} Plaintiffs-appellants Linda and Robert Burdette appeal from the June 29, 2006, entry of the Perry County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Matthew Stevens.
 STATEMENT OF FACTS AND THE CASE {¶ 2} Appellants met appellee and his wife through church, and the couples became friends. The church was undergoing renovations, and the couples were helping to "gut the church". Appellee offered to take some of the combustible debris home to burn. On or about the morning of January 18, 2003, appellants telephoned appellee's residence and asked if they could come over to the appellee's home to assist with the burning and clean up of the combustible items.
 {¶ 3} Appellants had not previously been to the appellee's home. They arrived at the appellee's home, were shown around the property, and invited inside. The couples chatted in the appellee's kitchen, and appellee's wife offered appellants tea and coffee. Appellant Linda Burdette saw a picture that caught her eye hanging on a nearby wall, and walked over to look at it. There was a trap door approximately two and one half (2 ½ ) feet wide by five and one half (5 ½) feet long in front of the picture that opened up to an entrance to the basement. The trap door, which is located on the side of the living room, was open. Appellant Linda Burdette fell into the 2 ½ by 5 ½ feet hole and suffered injuries.
 {¶ 4} Appellants filed a complaint against appellee on January 18, 2005, sounding in negligence. Appellee filed a motion for summary judgment on April 21, 2006, to which appellants responded on May 12, 2006. Appellee filed a reply brief in support of his motion for summary judgment on May 18, 2006. The trial court granted *Page 3 
appellee's motion for summary judgment on June 29, 2006, without opinion. Appellants appeal, setting forth the following assignment of error.
 {¶ 5} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES [SIC] MATTHEW STEVENS, ET AL."
 I {¶ 6} Appellants, in their sole assignment of error, argue that the trial court erred in granting appellee's motion for summary judgment. We disagree.
 {¶ 7} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Therefore, we must refer to Civ .R. 56, which provides, in pertinent part:
 {¶ 8} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 9} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary *Page 4 
judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, 674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. It is based upon this standard that we review appellants' sole assignment of error.
 {¶ 10} As an initial matter, we note that appellants argue that the trial court erred in failing to set forth findings of fact and conclusion of law in its June 29, 2006, entry granting summary judgment. We disagree.
 {¶ 11} First, a review of the record reveals no such request for findings of fact and conclusions of law on the part of appellants. Moreover, Civ.R. 52 provides that "[findings of fact and conclusions of law required by this rule and Rule 41(B)(2) are unnecessary upon all other motions including those pursuant to Rule 12, Rule 55 and Rule 56." This language makes it clear that findings of fact and conclusions of law are not necessary when a trial court rules on a party's motion for summary judgment. As such, the trial court did not err when it did not set forth findings of fact and conclusions of law.
 {¶ 12} At issue in the case sub judice is whether appellants established a claim for negligence. In order to establish a claim for negligence, a plaintiff must show: (1) a *Page 5 
duty on the part of defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. Texler v. D.O. Summers Cleaners Shirt Laundry Co.,81 Ohio St.3d 677, 680, 1998-Ohio-602, 693 N.E.2d 271. The mere fact that Appellant Linda Burdette fell does not establish any negligence on the part of appellee. See, Green v. Castronova (1966), 9 Ohio App.2d 156,161, 223 N.E.2d 641. Instead, negligence must be proven by showing a duty exists and that appellee failed to satisfy that duty. SeeTexler, supra.
 {¶ 13} The legal duty that landowners owe a person who enters their land depends upon the status of the entrant. Gladon v. Greater ClevelandRegional Transit Auth. (1996), 75 Ohio St.3d 312, 315, 1996-Ohio-137,662 N.E.2d 287. In Gladon, the Ohio Supreme Court described the entrant's status as follows: "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Gladon, supra at 315.
 {¶ 14} "The status of an invitee is not absolute but is limited by the landowner's invitation." * * * [T]he visitor has the status of an invitee only while he is on the part of the land to which his invitation extends-or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come. * * * If the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor, or with such consent.' 2 Restatement of the Law 2d, Torts (1965), 181-182, Section 332, Comment l." Gladon, 75 Ohio St.3d at 315. *Page 6 
 {¶ 15} A licensee enters upon the premises of another by permission or acquiescence, for his own pleasure and benefit and not by inviting.Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611.
 {¶ 16} While a landowner owes a duty to an invitee to exercise ordinary care for the invitee's safety and protection and to protect the invitee by maintaining the premises in a safe condition, with respect to a licensee, "a landowner owes no duty, except to refrain from willful, wanton or reckless conduct which is likely to injure the licensee.Gladon at 317. See also Light supra. A landowner must warn an invitee of latent or concealed defects. See Parsons v. Lawson (1989),57 Ohio App.3d 49, 50, 566 N.E.2d 698.
 {¶ 17} Furthermore, the Ohio Supreme Court, in Scheibel v. Lipton
(1951), 156 Ohio St. 308, 102 N.E.2d 453 held in paragraph three of the syllabus as follows: A host owes a social guest the duty "to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises" and "to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." A host, however, is not an insurer of the safety of a guest, and there is no implied warranty on the part of a host that the premises to which a guest is invited by him are in safe condition. Id. at paragraph two of the syllabus. Rather, a guest assumes the ordinary risks which attach to the premises. *Page 7 
 {¶ 18} Appellants and appellee dispute appellants' legal status while on appellee's property. Appellants argue that they were social guests and/or invitees at the time of the injury and that appellee owed them the duty to exercise ordinary care and to warn them of any latent defects. In turn, appellee argues that appellants were licensees at the time of the injury and that appellee only had a duty to refrain from wantonly or willfully causing injury.
 {¶ 19} However, we need not determine appellants' status at the time of the injury, for assuming, arguendo, that appellants were invitees and/or social guests and that the higher standard of care applied, appellee was nonetheless entitled to summary judgment.
 {¶ 20} The Supreme Court of Ohio, in Armstrong v. Best Buy,99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, held as follows: "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." Armstrong, syllabus. "The rationale underlying this doctrine is `that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" Id. at paragraph 5, quoting Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 644, 597 N.E.2d 504.
 {¶ 21} The determination of the existence and obviousness of a danger alleged to exist on a premise requires a review of the facts of the particular case.
 {¶ 22} In the case sub judice, appellant Linda Burdette testified on deposition that she has no recollection of the fall, but rather, remembers only walking towards a picture hanging on the wall: *Page 8 
 {¶ 23} "A. I don't really remember, but that's the proximity that I'm trying to — I noticed a bright picture on the wall, and I walked over to the picture.
 {¶ 24} "Q. Okay. Let me stop you right there a minute. Is this picture — are you still in the kitchen, or have you gone elsewhere in the house?
 {¶ 25} "A. It's kind of together, the kitchen and the — it's — I can't say that there's walls. We're all I the same area.
 {¶ 26} "Q. Are you in at this point what people would think of as their living room, or are you still in the kitchen area?
 {¶ 27} "A. I would say more like their dining area.
 {¶ 28} "Q. Okay. And you walk over and you're looking at the picture, correct?
 {¶ 29} "A. Uh-huh.
 {¶ 30} "Q. What happens?
 {¶ 31} "A. I don't know.
 {¶ 32} "Q. Okay. Do you remember falling?
 {¶ 33} "A. No.
 {¶ 34} "Q. As you're walking toward this picture —
 {¶ 35} "A. Yes.
 {¶ 36} "Q. — are there rugs on the floor?
 {¶ 37} "A. I don't know.
 {¶ 38} "Q. Do you remember what the floor was like?
 {¶ 39} "A. No, sir.
 {¶ 40} "Q. Did you get up to see the picture, or are you just on your way?
 {¶ 41} "A. I hadn't sat down. I hadn't sat down in the chair. *Page 9 
 {¶ 42} "Q. Okay.
 {¶ 43} "A. The picture caught my eye.
 {¶ 44} "Q. So let me — and it's — before this fall occurs, I know you say you don't remember falling, but had you gotten up to look at the picture or are you en route? Did you ever get to the picture is all I'm asking you.
 {¶ 45} "A. I don't know. I don't know what the picture was. I don't know." Deposition of Linda Burdette at 32-33.
 {¶ 46} Appellant Robert Burdette testified, during his deposition, as follows:
 {¶ 47} "Q. Okay. What happens then?
 {¶ 48} "A. Well, I'm looking down at the floor, I'm looking at the walls and the floor; and I see Linda walking past me. I see her walking over across the room, and I really didn't know what she was going to look at but she seen something that caught her eye. And as I looked down, she was walking at an angle away from me.
 {¶ 49} "I seen — as I'm looking across the floor, I seen this hole inthe floor; and I kind of just sit there, and I just get ready to say something to watch that hole in the floor. And before I could get it out, she was on her way down the steps.
 {¶ 50} "Q. Okay. Let me talk about this hole in the floor a little bit. Do you know what room that would be in, what room you would consider that?
 {¶ 51} "A. Living area.
 {¶ 52} "Q. Living room, is that what you'd call that?
 {¶ 53} "A. Yeah.
 {¶ 54} "Q. Okay. *Page 10 
 {¶ 55} "A. Or family room, whatever." Deposition of Robert Burdette at 18-19. (Emphasis added). As noted by appellee, appellant Robert Burdette admitted he could see the opening in the floor from across the room.
 {¶ 56} When asked if he knew how big the hole in the floor was, appellant Robert Burdette further testified as follows:
 {¶ 57} "A. As wide as the staircase. At the time — yeah, it was about as wide as the staircase, because it was built right in the floor.
 {¶ 58} "Q. Do you know how long it was or how wide it was? We can measure the steps, I guess, but do you know how long it was?
 {¶ 59} "A. No. Maybe 5 foot, maybe. I'm guessing. I'm not — you know, I guess when you're — I guess you figure distance, you know, everybody just has a rough estimate.
 {¶ 60} "Q. Uh-huh.
 {¶ 61} "A. You know it's more than 3, but you don't figure it's more than 5, 6 foot. You know it ain't 10 foot or the whole length of the —
 {¶ 62} "Q. Sure. And I'm not asking you to tell me to the inch. I'm just asking you to tell me what you remember.
 {¶ 63} "A. Yeah, that's what I remember, maybe 4 or 5 foot, somewhere in there." Deposition of Robert Burdette at 20-21.
 {¶ 64} Moreover, appellants' expert, during his deposition, admitted that if a person were looking at the floor from two (2) feet away from the hole, he or she would have been able to see the hole. Deposition of William Vigilante, Jr. at 72. *Page 11 
 {¶ 65} Based on the foregoing, we are unpersuaded by appellants' argument that the evidence before the trial court raised genuine issues of material fact regarding whether the trap door was open and obvious and/or whether appellee's failure to warn appellant about the trap door breached his duty. Based on facts of the case sub judice, we find that reasonable minds could only conclude that the 2 ½ x 5 foot hole into which appellant Linda Burdette fell was open and obvious. As such, appellee owed no duty to warn her of the hazard.
 {¶ 66} Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of appellee.
 {¶ 67} Accordingly, the judgment of the Perry County Court of Common Pleas is hereby affirmed.
 Gwin, P.J. and Farmer, J. concur *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Perry County Court of Common Pleas is affirmed. Costs assessed to appellants. *Page 1